**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

ALDRIN CARAO,

       Plaintiff,

               v.

BIOGEN INC.,

       Defendant.

Civil Action No.  1:18-cv-11993

## NOTICE OF REMOVAL

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT
OF MASSACHUSETTS:**

Defendant, Biogen Inc. ("Biogen"), by its attorneys, hereby files this Notice of Removal.
In support hereof, Biogen respectfully submits that:

1.	On or about August 15, 2018, Plaintiff Aldrin Carao filed the Complaint in this
matter in the Massachusetts Superior Court, Middlesex County, Civil Action No. 18-2347
("State Court Action").

2.	The Summons and Complaint were served on Biogen in the State Court Action on
August 29, 2018.  True and correct copies of all process, pleadings and orders served by Plaintiff
on Biogen in the State Court Action are attached hereto as Exhibit 1.

3.	On September 18, 2018, Biogen filed an Answer in the State Court Action.  A
true and accurate copy of the Answer is attached hereto as Exhibit 2.

4.	This case is removable to this Court pursuant to 28 U.S.C. § 1331 as Plaintiff has
asserted claims under a law of the United States, specifically the Americans with Disabilities
Act.  See Complaint, ¶ 77 ("By filing of this Complaint, Mr. Carao now removes this action from

the MCAD to this court pursuant to the provisions of G.L. c. 151B § 9 and the Americans with Disability Act.").

5.      Accordingly, this action is removable to this Court under 28 U.S.C. §§ 1331 and 1441(c)(1)(A).

6.      This notice and petition is timely filed within the provisions of 28 U.S.C. § 1446(b).  In particular, Biogen has effected removal within thirty (30) days of service of the Summons and Complaint.

## NOTICES

7.      Pursuant to 28 U.S.C. §1446(d), Biogen will notify the Middlesex County Superior Court and the Plaintiff of this Notice of Removal by filing with the Middlesex County Superior Court a Notice of Filing of Notice of Removal.  A copy of the Notice of Filing, which will be filed with the Middlesex Superior Court, is attached hereto as Exhibit 3.

WHEREFORE, Biogen prays that the above-action now pending against it in the Middlesex County Superior Court be removed therefrom to this Court.

Respectfully submitted,

BIOGEN INC.

By its attorneys,

*/s/ Jonathan R. Shank*
Jeffrey S. Brody (BBO No. 566032)
Jeffrey.brody@jacksonlewis.com
Jonathan R. Shank (BBO No. 672414)
Jonathan.shank@jacksonlewis.com
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, MA  02116
Tel: (617) 367-0025
Dated:  September 21, 2018                         Fax: (617) 367-2155

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 21st day of September 2018, I caused a true and accurate copy of the above document to be served upon Plaintiff's counsel, Paul H. Merry, Law Offices of Paul H. Merry, 50 Congress Street, 10th Floor, Boston, MA 02109, via electronic and first class mail.

<u>/s/ <i>Jonathan R. Shank</i></u>
Jackson Lewis P.C.

4820-5938-9299, v. 1

# EXHIBIT 1



COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT
DEPARTMENT, TRIAL COURT
OF THE COMMONWEALTH

ALDRIN CARAO,

     Plaintiff,

v.

BIOGEN, INC.

     Defendant.

)
)
)
)
)
)
)
)
)
)
)

No. 18-2347

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

AUG 1 5 2018

CLERK

## COMPLAINT AND JURY CLAIM

### I. INTRODUCTION

1.    Aldrin Carao brings this action seeking injunctive relief and damages on account of defendant Biogen Inc.'s discriminatory actions on the basis of his disability, Parkinson's Disease; on the basis of the company's retaliatory actions for Mr. Carao's exercise of his statutory rights; for breach of contract and for breach of the implied covenant of good faith and fair dealing

### II. JURISDICTION AND VENUE

2.    Jurisdiction over the parties and subject matter of this action is conferred upon this court by Article XXI of the

Massachusetts Declaration of Rights and Massachusetts General
Laws Chapters 214, §4; 149 §185; 151B, §9; 12, §11I.

3.    Pursuant to 151B, §9, venue lies in this County, as the
acts an omissions that violated M.G.L. c. 151B, §4, took place
here.

### III. PARTIES

4.    Plaintiff Aldrin Carao ("Mr. Carao") is a natural person
residing at 733 Norwest Drive, Norwood, Massachusetts 02062.

5.    Defendant Biogen, Inc., ("Biogen"), is corporation
organized under the laws of Delaware with a principal place of
business at 225 Binney Street, Cambridge, Massachusetts 02542.

### IV. FACTS

6.    Your plaintiff Aldrin Carao has more than twenty years
of experience in computer software development.

7.    Mr. Carao holds a Master's Degree in computer
engineering from Boston University, in addition to other training
in computer software design and management.

8.    In or about 2005, Mr. Carao was diagnosed with a
degenerative neurological condition known as Parkinson's disease,
which arises from loss of neurons in the brain.  As the condition
advances, Parkinson's disease commonly leads to involuntary
shaking of the limbs and head and other neuromuscular symptoms.

9.    One feature of Parkinson's disease is slow movement,
also known as Bradykinesia.  Those suffering from Bradykinesia

-2-

tend to perform ordinary activities -- such as walking, moving and changing clothes -- more slowly than persons without the condition.  Individuals suffering Bradykinesia also experience a reduction in spontaneous movements and difficulty in performing repetitive movements, including difficulty tapping fingers, and slow and soft speech.  Ordinary tasks -- such as eating, dressing and brushing -- take additional time.  Symptoms become more noticeable as the disease progresses and can cause serious impediments in performing routine functions.

10.  In 2012, Mr. Carao applied for a position at and was hired by defendant to work at its facility in Weston.

11.  Mr. Carao's initial job title was "Lead Systems Administrator."  Approximately 15 months later, defendant changed his title to "IT Security Architect."

12.  Mr. Carao's job duties included designing and maintaining systems that use security software.

13.  When defendant hired Mr. Carao, the symptoms of his Parkinson's disease were not readily apparent to others.

14.  About one-and-a-half years into his employment with defendant, in or about late 2013 or early 2014, certain symptoms of Mr. Carao's Parkinson's disease increased in severity and became apparent to others.

15.  The condition began visibly impacting, without limitation, Mr. Carao's speech and fine motor movements.  Typing,

-3-

in particular, grew increasingly difficult and time-consuming for Mr. Carao.

16.  At about this time, Mr. Carao also began experiencing increasing fatigue, which was caused by a medication used to treat his Parkinson's disease.  Mr. Carao observed that he would occasionally and involuntarily doze for a moment or two while doing repetitive tasks.

17.  In or around June 2014, Mr. Carao informed John Lamoureux, who was Senior Director for Information Technology at defendant, and his entire team that he had Parkinson's Disease.

18. Mr. Carao specifically requested that he be able to work from home on certain days due to his disability.  He also requested that he be able to attend the daily 9:00 a.m. work group meeting remotely on the days that he was scheduled to come in to reduce driving in heavy traffic, which had exacerbated the fatigue he suffered due to his medications; and posed a threat to his safety while driving.

19.  Defendant allowed these requests in or around the summer of 2014.

20.  Working from home did not diminish Mr. Carao's dedication to defendant nor his attention to his work.  To the contrary, on days that he was present at defendant, he typically stayed at work late.  Mr. Carao also periodically worked late into the evenings or on weekends remotely.  Thus, he worked as

many, or more, hours as his peers; and his strong dedication to defendant was unaffected by the accommodations he received.

21. In the wake of disclosing his disabilities to the team and requesting accommodations, two of his supervisors, Scott Hopses and John Lamoureux, became increasingly critical of Mr. Carao, and, *inter alia*, removed his ability to get into certain production systems, which were necessary to do official work on projects.

22. In or around fall 2014, Mr. Carao took a three-month leave of absence due to his Parkinson's disease.

23. For the first several years, Mr. Carao's career with defendant had gone well; and he received strongly positive performance evaluations in 2012 and 2013.

24. He worked with a number of teams focusing on cybersecurity for the firm and its customers.

25. Mr. Carao also had positive interactions with defendant's executives.

26. Since the start of his employment with Defendant, Mr. Carao had been advocating for the company to implement an adequate "enterprise identity and Access Management system ("IAM")" -- that is, a large-scale software suite that supports easier Identity Management processes for a more reliable and secure set of Access Management rules to enhance to the security of access to defendant's internal systems integrated within the

enterprise-wide IAM system.

27.   Mr. Carao observed that the absence of an adequate enterprise system at defendant was causing inefficiencies in the company's operations and sometimes even posed security concerns.

28.   For example, sometimes systems that controlled physical access to defendant's facilities had received delayed or inaccurate information when employees were terminated.

29.   New employees were also sometimes unable to access critical training software for weeks and, as a result, were unable to begin work.

30.   In 2012, Mr. Carao learned that defendant was considering the purchase of a software product from another company, Dell Computers, Inc.

31.   As part of his job, Mr. Carao was tasked with reviewing the product before it was purchased.

32.   After reviewing and analyzing the product, Mr. Carao concluded that the product was unsatisfactory and would not meet defendant's needs, and he reported this assessment to his supervisor.

33.   Nevertheless, Mr. Carao's supervisor indicated that he did not have problems with the product, and defendant purchased it.

34.   Regrettably, Mr. Carao's foresight proved accurate, and the new software created a number of problems in defendant's

-6-

operations.

35.  Nevertheless, employees in Mr. Carao's unit struggled to make the product perform adequately throughout the remainder of Mr. Carao's employment with defendant.

36.  Mr. Carao was the "lead" of a team of seven people, including himself.

37.  In addition to his software analysis duties, Mr. Carao (and all members of his unit) were required to handle inquiries from customers (referred to as "client cases") concerning issues with defendant's software products; and were expected to respond to a specified number of such inquiries over the course of a work day.

38.  Defendant's employees frequently communicate with the company's customers by typing on a conventional keyboard, using their hands and fingers.

39.  However, as noted, Mr. Carao's Parkinson's disease is a neurologic condition, which, in his case, affected the functioning of his hands and fingers, and his ability to type on a keyboard.

40.  His typing was slower than some other employees and as a result, he sometimes was unable to process comparable numbers of customer inquiries compared to the other members of his unit.

41.  Because this task did not always require Mr. Carao's full experience or qualifications, assigning all or some of his

client cases to an employee whose ability to type was unimpaired would have been not only possible, but more efficient.

42.   Although assigning others to do this typed work would not have been an undue hardship on Defendant, and even though Defendant was aware of the limitations on Mr. Carao's typing caused by his disability, defendant declined to provide such an accommodation despite Mr. Carao's request and instead required Mr. Carao to perform this function, and faulted him when he had difficulty completing the assignment in a timely manner.

41.   Mr. Carao was tasked with keeping up-to date architecture and compliance-related documents, including re-writing documentation to reflect updates, that described the IAM system even though this task required extensive typing and even though a business analyst who worked as a contractor for defendant would have been able to assist on the program.

42.   Beginning in late 2014, a change of management took place in Mr. Carao's workplace, with the result that Mr. Carao was shuffled between several units in 2015.

43.   In or about early 2015, Mr. Carao was speaking with Adriana Karaboutis ("Ms. Karaboutis"), defendant's executive vice president for technology, business solutions & corporate affairs, about problems with a specific project.

44.   Ms. Karaboutis asked Mr. Carao why he did not voice his concerns about the Dell software product earlier; and Mr. Carao

replied that he had voiced concerns several times but that his concerns were not heeded.

45.   In response, Ms. Karaboutis told Mr. Carao that, next time, he should talk to one or both of two other executives, Mark Yunger or Mark Griffiths, and that if they did not respond to his concerns, he should contact her.

46.   Due to various restructuring efforts by defendant, Mr. Carao had several supervisors over the course of 2015.

47.   Initially, Mr. Carao found one of these supervisors, David Griffeth ("Mr. Griffeth"), to be supportive and cooperative.

48.   In or about September 2015, defendant hired Larry Jarvis ("Mr. Jarvis") as a vice president, and Mr. Jarvis became the supervisor of Mr. Griffeth.

49.   Mr. Jarvis was reluctant to fund the replacement project to remediate the failures that had occurred during the previous three years using the problematic Dell software.

50.   In late 2015, Mr. Carao sent an e-mail to Ms. Karaboutis, seeking her advice on the enterprise software system, and relying on Ms. Karaboutis' representations that he could bring his concerns to her.

51.   Although Ms. Karaboutis had previously encouraged Mr. Carao to speak his concerns to her, shortly after sending the email to Ms. Karaboutis, Mr. Griffeth rebuked Mr. Carao for

communicating directly with Ms. Karaboutis rather than with him or Mr. Jarvis.

52. Thereafter, Mr. Carao observed that Mr. Griffeth's and Mr. Jarvis' attitudes toward him became noticeably more negative.

53. As one manifestation of the change in attitude, Mr. Carao found himself excluded from discussions of technical issues and was inexplicably excluded from a committee on the Identity Access Management Program, which was a particular focus of his.

54. Mr. Griffeth also increased pressure on Mr. Carao to produce as much typed work as other members of his team -- even though Mr. Griffeth knew of Mr. Carao's disability and of the limitations imposed on Mr. Carao thereby; and despite the fact that the typing tasks could easily have been performed by less-senior employees whose ability to type was unimpaired.

55. Thereafter, Mr. Griffeth's critiques of Mr. Carao increased in number and severity.

56. Mr. Carao remained dedicated to his job and continued to perform his duties satisfactorily or better.

57. In or about January, 2016, Mr. Carao was asked to complete a project that Mr. Griffeth said Mr. Jarvis needed immediately.

58. To complete this assignment, Mr. Carao worked nights and over the weekend, in addition to his normal hours, for about ten (10) days, until the project was complete.

59.  At or around the same time period, Mr. Jarvis also announced to the unit that all employees would be expected to appear for work no later that 8 a.m., Monday through Thursday.

60.  At the time of this announcement, Mr. Carao regularly worked from home on Mondays and Fridays, which was an accommodation for his Parkinson's disease.

61.  In announcing the schedule change, Mr. Jarvis remarked that he "knew" the change would be a problem for certain individuals.

62.  Mr. Jarvis stated that the schedule change would not affect Mr. Carao, but that promise proved to be an empty one, as one month later Mr. Carao had been terminated.

63.  Shortly before his termination, Mr. Carao sought to engage human resources and his leadership team in further conversation about accommodations to his condition, in light of changing circumstances at defendant, but no such meeting ever happened and he ended up being terminated without having the issue addressed.

64.  Defendant maintains and makes available to its employees various employee policies and informs its employees they are expected to have their conduct guided by the terms of these policies.

65.  The Defendant's policy material is presented and used by defendant in ways sufficient to make it part of the terms of

-11-

the employment contract between defendant and its employees.

66.   Because of its nature as embodying certain terms of the policy materials between Defendant and its employees, the terms of the policy materials are binding on defendant under Massachusetts law.

67.   Defendant's employee handbook contains terms governing its procedure and practice respecting termination of employees.

68.   Among the terms in defendant's policy materials respecting termination of employees is a term requiring that employees be given notice of performance deficiencies and, except in unusual circumstances, an opportunity to correct those deficiencies, including sufficient time to effect those corrections.

69.   On or about February 22, 2016, Mr. Griffeth informed Mr. Carao that he was being put on a ninety-day "performance improvement plan."

70.   The performance improvement plan defendant ordered that Mr. Carao work under in February 2016, was contractually binding on defendant.

71.   Instead, on February 25, 2016, only four days after issuing the 90-day "performance improvement plan," defendant notified Mr. Carao that the company was eliminating his position and, accordingly, terminating his employment.

72. Defendant terminated Mr. Carao's employment prior to the

-12-

expiration of the 90-day time period he had been promised in which to correct performance deficiencies identified in the plan.

73.   By terminating Mr. Carao prior to the expiration of the 90-day period he had been promised in which to correct performance deficiencies, defendant breached the contract between Mr. Carao and itself which arose under its employee policies and the performance plan.

74.   Within a week or two of his departure, Mr. Carao noticed that defendant had posted an advertisement for an open position whose stated requirements were very similar to his prior position at the company.

75.   Having considered all of the circumstances of his employment and termination, Mr. Carao reluctantly concluded that defendant had terminated his employment in whole or in part because of his Parkinson's disease, because of his need for reasonable accommodations thereto, and/or because of his exercise of his rights under disability discrimination laws.

76.   Thereafter, Mr. Carao timely filed his complaint with the Massachusetts Commission Against Discrimination ("MCAD"),

77.   By the filing of this Complaint, Mr. Carao now removes that action from the MCAD to this court pursuant to the provisions of G.L. c. 151B §9 and the Americans with Disability Act.

## V. CAUSES OF ACTION

### COUNT I: ILLEGAL DISCRIMINATION ON ACCOUNT OF DISABILITY UNDER G.L. c. 151B

78.   Your plaintiff Aldrin Carao hereby re-alleges and incorporates herein all allegations contained in the foregoing paragraphs of this Complaint as if fully set out herein.

79.   At all times relevant hereto, Mr. Carao's Parkinson's disease substantially limited his major life functions of, without limitation, speaking, full function of his hands and fingers, and caring for himself.

80.   At all times relevant hereto, Mr. Carao's Parkinson's disease also substantially impaired the functioning of his neurological system, one of the systems of the body.

81.   Accordingly, Mr. Carao's Parkinson's disease was at all times relevant hereto a handicap and/or a disability, (hereinafter "disability") as defined under M.G.L. c. 151B, §4.

82.   At all times relevant to this Complaint, Mr. Carao was a qualified individual with a disability, Parkinson's disease.

83.   Massachusetts law required defendant to engage in an interactive dialogue with Mr. Aldrin with the objective of developing reasonable accommodations for his disability, Parkinson's disease, to permit him to continue his employment. G.L. c. 151B §4.

84.   Massachusetts law also required defendant to provide reasonable accommodations for Mr. Carao's disability, Parkinson's

disease. G.L. c. 151B §4.

85.  At all times relevant to this Complaint, defendant was aware of Mr. Carao's disability, Parkinson's disease, and his need for reasonable accommodations thereto.

86.  At various times, defendant failed to engage in an interactive dialogue with Mr. Carao with the objective of determining meaningful and effective accommodations for his Parkinson's disease, in violation of M.G.L. c. 151B, §4.

87.  At various times, defendant also failed to provide reasonable accommodations to Mr. Carao, in further violation of M.G.L. c. 151B, §4.

88.  Ultimately, Defendant terminated Mr. Carao's employment in whole, or in part, because of his Parkinson's disease and/or his need for reasonable accommodation thereto, which further violated M.G.L. c. 151B, §4.

89.  Mr. Carao was substantially and materially injured and damaged as a direct and proximate result of defendant's violations of Massachusetts law.

## COUNT II: UNLAWFUL RETALIATION AND INTERFERENCE WITH STATUTORY RIGHTS UNDER G.L. c. 151B

90.  Your plaintiff Aldrin Carao hereby re-alleges and incorporates herein all allegations contained in the foregoing paragraphs of this Complaint as if fully set out herein.

91.  Mr. Carao was guaranteed by Massachusetts law the

rights to work to the extent of his capacity and to a workplace free of discrimination on the basis of disability, and free of interference with his enjoyment of that right.

92. Massachusetts law prohibits recrimination or retaliation against persons seeking to assert their rights as guaranteed by statute.  G.L. c. 151B §4 ¶4 et seq.

93.  By terminating his employment without permitting him to complete his performance plan, within a short time of his complaint, defendant unlawfully retaliated against Mr. Carao for his exercise of rights under M.G.L. c. 151B, §4, to wit, for seeking reasonable accommodations, which was a further violation of this statute.

94.  Mr. Carao was substantially and materially injured and damaged as a direct and proximate result of defendant's violation of Massachusetts law.

## COUNT III: BREACH OF CONTRACT

95.  Your plaintiff Aldrin Carao hereby re-alleges and incorporates herein all allegations contained in the foregoing paragraphs of this Complaint as if fully set out herein.

96.  Defendant and Mr. Carao had a written and/or implied employment contract governing the employment of Mr. Carao.

97.  As set forth above, defendant made various representations to Mr. Carao, including but not limited to, by

-16-

encouraging him to bring his concerns to the company's executives; and by promising him ninety days to correct performance deficiencies it claimed he had (but which he disputed).

98.    Defendant provided its employees, including Mr. Carao, employee policies, which among other things set out terms and conditions for termination of employment; and which employees were required to comply with respecting their conduct.

99.    On information and belief, among the terms and conditions for termination of employment were requirements that employees be notified of performance deficiencies and provided adequate opportunity to correct them.

100.   The way defendant presented and used its employee handbook rendered the terms of the employee policies contractually binding upon defendant.

101.   Further, Mr. Carao reasonably relied on Defendant's representations concerning communication with company executives and concerning his performance improvement plan, to his detriment.

102.   Defendant also represented that Mr. Carao would have ninety (90) days to meet the terms of the "performance improvement plan" imposed by the company, but instead terminated his employment under the false pretext that his job had been eliminated.

-17-

103.   Defendant breached its contract with Mr. Carao by, without limitation, terminating his employment in whole or in part because he voiced his concerns to upper management, as per employee policies, and by failing to comply with its representations with respect to the performance improvement plan.

**COUNT IV: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

104.   Your plaintiff Aldrin Carao hereby re-alleges and incorporates herein all allegations contained in the foregoing paragraphs of this Complaint as if fully set out herein.

105.   Defendant and Mr. Carao had a written and/or implied employment contract governing the employment of Mr. Carao.   In all employment contracts in Massachusetts, there is an implied covenant of good faith and fair dealing.

106.   As a result of the conduct and action set forth above, defendant breached the implied covenant of good faith and fair dealing.

107.   Mr. Carao was substantially and materially injured and damaged as a result of defendant's breach of its covenant of good faith and fair dealing, including but not limited to, those damages he sustained due to the loss of his job.


## V. RELIEF

WHEREFORE YOUR PLAINTIFF ALDRIN CARAO hereby RESPECTFULLY REQUESTS that this Honorable Court:

-18-

1.   Following a hearing on the merits, enter its findings that:

a)   Defendant violated Massachusetts law, G.L. c. 151B §§ 4 and 9 by discriminating against him on the basis of his disability, including failing to engage in interactive dialogue;

b)   Defendant further violated Massachusetts law, G.L. c. 151B §§ 4 and 9 by retaliating against him for exercising his rights thereunder;

c)   Defendant breached its contract with the Plaintiff Aldrin Carao;

d) Defendant breached the implied covenant of good faith and fair dealing inherent in the contract with Mr. Carao.

2.   Issue its orders requiring that Defendant:

a)   Forthwith cease any discrimination against employees on account of disability and retaliation against employees for exercising their statutory rights;

b)   Forthwith pay to Mr. Carao any and all wages, benefits and other compensation lost by him on account of his wrongful and/or discriminatory termination of employment;

c)   Forthwith grant to Mr. Carao injunctive relief to make him whole on account of his wrongful and/or discriminatory termination; and

d)   Forthwith pay to him a sum sufficient to compensate him adequately for the emotional distress he suffered as a result of

-19-

defendant's unlawful discriminatory and retaliatory treatment of him; and

e) Award punitive damages against defendant for its unlawful discriminatory and retaliatory treatment of Mr. Carao;

f) Award compensatory damages for defendant's breach of contract;

g) Award compensatory damages for defendants' breach of the implied covenant of good faith and fair dealing.

3.    Additionally, award Mr. Carao interest at the statutory rate on the total amount awarded to him in response to this Complaint between the date of his demand on defendant and the date of the Court's award;

4.    Additionally, award Mr. Carao his costs and reasonable attorneys' fees for prosecuting this action, as provided under G.L. cc. 151B §9 and 12 §11I.

5.    Grant such other and additional relief as to the Court may appear meet and just.


PLAINTIFF CLAIMS A TRIAL BY JURY AS TO ALL COUNTS SO TRIABLE.


                                        RESPECTFULLY SUBMITTED,
                                        ALDRIN CARAO
                                        BY HIS ATTORNEYS

Paul H. Merry, Esq.
B.B.O. No. 343580
Elizabeth Mason, Esq.
B.B.O. 660915
Law Offices of Paul H. Merry
50 Congress Street - 10th Flr
Boston, MA 02109
(617) 720-2400
paul.merry@fairworkplace.net

DATE: August 15, 2018

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 18-2347 | Trial Court of Massachusetts The Superior Court | Massachusetts Court System eFile |
|---|---|---|---|

| PLAINTIFF(S): | Adrin Carao | COUNTY | |
|---|---|---|---|
| ADDRESS: | 733 Norwest Drive, Norwood, MA 02062 | | |
| | | DEFENDANT(S): | Biogen, Inc. |
| ATTORNEY: | Paul Merry | | |
| ADDRESS: | Law OFfice of Paul Merry | ADDRESS: | 225 Binney Street, Cambridge, MA  02542 |
| | 50 Congress Street, Suite 100,  Boston, MA 02109 | | |
| BBO: | 343580 | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☒ YES   ☐ NO |

**\*If "Other" please describe:**

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses .............................................................................. $ _____
    2. Total doctor expenses ............................................................................... $ _____
    3. Total chiropractic expenses ....................................................................... $ _____
    4. Total physical therapy expenses ................................................................ $ _____
    5. Total other expenses (describe below) ....................................................... $ _____
                                                 Subtotal (A): $ 3,300
Prescription drug costs due to not having insurance.
B. Documented lost wages and compensation to date ........................................ $ 134,000
C. Documented property damages to dated ........................................................ $ _____
D. Reasonably anticipated future medical and hospital expenses ........................ $ _____
E. Reasonably anticipated lost wages .............................................................. $ _____
F. Other documented items of damages (describe below) ................................... $ 70,000
Emotional distress damages

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                           TOTAL (A-F):$ 207,300.00

*[Handwritten signature over clerk stamp: AUG 15 2018 CLERK]*

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):
Contract claims are for lost wages

                                           TOTAL: $ 207,300.00

**Signature of Attorney/Pro Se Plaintiff: X**                               **Date:** 8/15/18

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

#### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record:  X** *Paul M. Merry*                               **Date:** 8/15/18

# EXHIBIT 2

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                          SUPERIOR COURT DEPARTMENT

ALDRIN CARAO,

               Plaintiff                          18-2347

               v.

BIOGEN, INC.

               Defendant.

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant Biogen Inc. ("Biogen" or "Defendant"), for its Answer to Plaintiff's Complaint and Jury Claim ("Complaint") states as follows:

### I.     INTRODUCTION

1.     The allegations in this paragraph 1 constitute Plaintiff's summary of legal claims, to which no response is required.  To the extent the Court deems that a response is required, the allegations are denied.

### II.     JURISDICTION AND VENUE

2.     The allegations in this paragraph of the Complaint contain legal conclusions to which no response is required.  To the extent the Court deems that a response is required, the allegations are denied.

3.     The allegations in paragraph 2 of the Complaint contain legal conclusions to which no response is required.  To the extent the Court deems that a response is required, the allegations in this paragraph  are denied.

### III.   <u>PARTIES</u>

4.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

5.     Defendant admits the allegations contained in this paragraph, except states that its correct corporate name is Biogen Inc.

### IV.   <u>FACTS</u>

6.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

7.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

8.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

9.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

10.     Defendant admits so much of this paragraph as alleges that Plaintiff was hired by Biogen in 2012 and that his primary work location at that time was in Weston, Massachusetts.  To the extent Plaintiff alleges otherwise, those allegations are denied.

11.     Defendant admits so much of this paragraph as alleges that Plaintiff's original job title was Lead Systems Administrator and that it subsequently changed to IT Architect. Defendant otherwise denies the allegations contained in this paragraph.

12.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

13.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

14.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

15.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

16.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

17.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

18.     Defendant admits so much of this paragraph as alleges that Plaintiff was provided accommodations that he requested during his employment.   Defendant otherwise denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

19.     Defendant admits so much of this paragraph as alleges that Plaintiff was provided accommodations that he requested during his employment.   Defendant otherwise denies the allegations contained in this paragraph.

20.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in the first sentence of this paragraph. Defendant denies the remaining allegations contained in this paragraph.

21.     Defendant denies the allegations contained in this paragraph.

22.     Defendant admits so much of this paragraph as alleges that Plaintiff took a medical leave of absence beginning in or about September 2014 that lasted more than three months. Defendant otherwise denies the allegations contained in this paragraph.

23.     Defendant denies the allegations contained in this paragraph.

24.     Defendant denies the allegations contained in this paragraph.

25.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

26.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

27.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

28.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

29.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

30.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

31.     Defendant denies the allegations contained in this paragraph.

32.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

33.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

34.     Defendant denies the allegations contained in this paragraph.

35.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

36.     Defendant denies the allegations contained in this paragraph.

37.     Defendant denies the allegations contained in this paragraph, except admits that responding to internal inquiries was part of his job.

38.     Defendant denies the allegations contained in this paragraph, except admits that company IT employees frequently use a keyboard.

39.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

40.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

41.     Defendant denies the allegations contained in this paragraph.

42.     Defendant denies the allegations contained in this paragraph.

41.     Defendant denies the allegations contained in this paragraph.[1]

42.     Defendant denies the allegations contained in this paragraph.

43.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

44.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

45.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

---

[1] The paragraph numbering in the original Complaint erroneously repeats paragraph numbers 41 and 42. This Answer similarly repeats the same paragraph numbering so that the responses track the original Complaint.

46.     Defendant admits so much of this paragraph as alleges that Plaintiff's supervisor changed during the course of 2015 for legitimate business reasons but otherwise denies the allegations contained in this paragraph.

47.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

48.     Defendant admits the allegations contained in this paragraph.

49.     Defendant denies the allegations contained in this paragraph.

50.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

51.     Defendant denies the allegations contained in this paragraph.

52.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

53.     Defendant denies the allegations contained in this paragraph.

54.     Defendant denies the allegations contained in this paragraph.

55.     Defendant denies the allegations contained in this paragraph.

56.     Defendant denies the allegations contained in this paragraph.

57.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

58.     Defendant denies the allegations contained in this paragraph.

59.     Defendant denies the allegations contained in this paragraph.

60.     Defendant admits so much of this paragraph as alleges that Biogen fully accommodated Plaintiff's alleged need for medical reasons to work an alternative work schedule,

including working from home on Mondays and Fridays. Defendant otherwise denies the allegations contained in this paragraph.

61.     Defendant denies the allegations contained in this paragraph.

62.     Defendant admits so much of this paragraph as alleges that Plaintiff was told that Biogen would continue with the accommodations it had given him relating to his work schedule and location, but otherwise denies the allegations contained in this paragraph.

63.     Defendant denies the allegations contained in this paragraph.

64.     Defendant admits so much of this paragraph as alleges that Defendant has various employment policies, but otherwise denies the allegations contained in this paragraph.

65.     Defendant denies the allegations contained in this paragraph.

66.     Defendant denies the allegations contained in this paragraph.

67.     Defendant denies the allegations contained in this paragraph.

68.     Defendant denies the allegations contained in this paragraph.

69.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph, except admits that Mr. Griffeth discussed a performance plan with Plaintiff during February 2016.

70.     Defendant denies the allegations contained in this paragraph.

71.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph, except admits that Plaintiff's employment was ended on or about February 25, 2016.

72.     Defendant denies the allegations contained in this paragraph.

73.     Defendant denies the allegations contained in this paragraph.

74.     Defendant denies the allegations contained in this paragraph.

75.     Defendant denies the allegations contained in this paragraph.

76.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

77.     The allegations in this paragraph are merely a summary of Plaintiff's acts in filing this complaint, to which no response is required.  To the extent the Court deems that a response is required, the allegations are denied.

## V.     CAUSES OF ACTION

### COUNT I: ILLEGAL DISCRIMINATION ON ACCOUNT OF DISABILITY UNDER
### G.L. c. 151B

78.     Defendant incorporates its responses to paragraphs 1 through 77 herein, including paragraph numbers that were repeated by Plaintiff, as its answer to paragraph 78 of the Complaint.

79.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

80.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

81.     The allegations in this paragraph contain legal conclusions to which no response is required.  To the extent the Court deems that a response is required, Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

82.     The allegations in this paragraph contain legal conclusions to which no response is required.  To the extent the Court deems that a response is required, Defendant denies the allegations contained in this paragraph.

83.     The allegations in this paragraph contain legal conclusions to which no response is required.   To the extent the Court deems that a response is required, Defendant denies the allegations contained in this paragraph.

84.     The allegations in this paragraph contain legal conclusions to which no response is required.   To the extent the Court deems that a response is required, Defendant denies the allegations contained in this paragraph.

85.     Defendant denies sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

86.     Defendant denies the allegations contained in this paragraph.

87.     Defendant denies the allegations contained in this paragraph.

88.     Defendant denies the allegations contained in this paragraph.

89.     Defendant denies the allegations contained in this paragraph.

## COUNT II: UNLAWFUL RETALIATION AND INTERFERENCE WITH STATUTORY RIGHTS UNDER G.L. c. 151B

90.     Defendant incorporates its responses to paragraphs 1 through 89 herein, including paragraph numbers that were repeated by Plaintiff, as its answer to paragraph 90 of the Complaint.

91.     The allegations in this paragraph contain legal conclusions to which no response is required.   To the extent the Court deems that a response is required, Defendant denies the allegations contained in this paragraph.

92.     The allegations in this paragraph contain legal conclusions to which no response is required.

93.     Defendant denies the allegations contained in this paragraph.

94.     Defendant denies the allegations contained in this paragraph.

## COUNT III: BREACH OF CONTRACT

95.     Defendant incorporates its responses to paragraphs 1 through 94 herein, including paragraph numbers that were repeated by Plaintiff, as its answer to paragraph 95 of the Complaint.

96.     Defendant denies the allegations contained in this paragraph.

97.     Defendant denies the allegations contained in this paragraph.

98.     Defendant denies the allegations contained in this paragraph.

99.     Defendant denies the allegations contained in this paragraph.

100.    Defendant denies the allegations contained in this paragraph.

101.    Defendant denies the allegations contained in this paragraph.

102.    Defendant denies the allegations contained in this paragraph.

103.    Defendant denies the allegations contained in this paragraph.

## COUNT IV: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

104.    Defendant incorporates its responses to paragraphs 1 through 103 herein, including paragraph numbers that were repeated by Plaintiff, as its answer to paragraph 104 of the Complaint.

105.    Defendant denies the allegations contained in this paragraph.

106.    Defendant denies the allegations contained in this paragraph.

107.    Defendant denies the allegations contained in this paragraph.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims for damages are barred, in whole or in part, by his failure to mitigate

damages.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of unclean hands, waiver, estoppel and/or laches.

### FOURTH AFFIRMATIVE DEFENSE

Every action taken by Defendant with respect to Plaintiff was taken for a legitimate business purpose and was consistent with principles of law.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff was not a qualified individual with a handicap and/or disability.

### SIXTH AFFIRMATIVE DEFENSE

Some or all of the accommodations allegedly sought by Plaintiff were unreasonable and/or constituted and undue hardship.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's contract claims fail for lack of consideration.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff has expressly waived any right to a trial by jury.

### RESERVATION OF RIGHT TO ASSERT ADDITIONAL DEFENSES

Defendant has not knowingly or intentionally waived any applicable defenses, and reserves the right to assert and rely upon other applicable defenses that may become available or apparent during discovery in this matter. Defendant reserves the right to amend or seek to amend its Answer and/or Affirmative Defenses. The assertion of any defense as an affirmative defense herein is not, and is not intended as, an admission that Defendant has the burden of proof on any such defense or on any related element of Plaintiff's claims.

WHEREFORE, Defendant respectfully requests that this Court:

      (a)     dismiss the Complaint in its entirety;

      (b)     enter judgment for Defendant on all counts;

      (c)     award Defendant its costs and attorneys' fees, as appropriate; and

      (d)     grant such other relief as the Court deems just and proper.

Dated: September 18, 2018

Respectfully submitted,

BIOGEN INC.,

By its attorneys,

Jeffrey S. Brody (BBO No. 566032)
Email: Jeffrey.Brody@jacksonlewis.com
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, MA  02116
Tel: (617) 367-0025
Fax: (617) 367-2155

## CERTIFICATE OF SERVICE

I hereby certify that, on this 18th day of September 2018, I caused a true and accurate copy of the above document to be served upon Plaintiff's counsel by first class mail postage prepaid.

Jeffrey S. Brody

12

# EXHIBIT 3

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT DEPARTMENT

|  |  |
|---|---|
| ALDRIN CARAO,<br><br>            Plaintiff<br><br>            v.<br><br>BIOGEN, INC.<br><br>            Defendant. | No. 18-2347 |

## NOTICE OF FILING OF NOTICE OF REMOVAL

To:     Middlesex County Superior Court
        Civil Clerk's Office
        200 Trade Center
        Woburn, MA 01801

**PLEASE TAKE NOTICE** that a notice of removal of this action from the Middlesex

County Superior Court has been duly filed in the United States District Court for the District of

Massachusetts. Attached hereto is a copy of that Notice of Removal.

Respectfully submitted,

BIOGEN INC.,

By its attorneys,

_____
Jeffrey S. Brody (BBO No. 566032)
Jeffrey.Brody@jacksonlewis.com
Jonathan R. Shank (BBO No. 672414)
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, MA  02116
Tel: (617) 367-0025
Fax: (617) 367-2155

Dated: September 21, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 21st day of September 2018, I caused a true and accurate copy of the above document to be served upon Plaintiff's counsel by first class mail postage prepaid.

_____
Jackson Lewis P.C.

4852-2405-7459, v. 1